***********
The undersigned reviewed the prior Opinion and Award, based upon the record before Deputy Commissioner Houser. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Houser with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. Plaintiff-employee is Bradley Allen Hicks, and defendant-employer is BP Siding Company, Inc.
2. On the relevant dates herein, Ohio Casualty Group was the carrier on the risk.
3. Defendant-employer regularly employees three (3) or more employees and is subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
4. The Industrial Commission has jurisdiction over the parties and all parties have been properly named in this action.
5. The parties also stipulated to the following documents:
a. Stipulated Exhibit (1), All Industrial Commission Forms;
b. Stipulated Exhibit (2), The Deposition of Plaintiff;
c. Stipulated Exhibit (3), A Video Deposition of Plaintiff;
d. Stipulated Exhibit (4), The Deposition of Dr. Richard Rumley;
e. Stipulated Exhibit (5), The Deposition of Dr. Larry S. Davidson, and;
f. Stipulated Exhibit (6), Medical Records.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of his deposition, plaintiff was forty-two (42) years of age, with his date of birth being September 7, 1960. Plaintiff completed the tenth grade of high school, and later obtained his GED while serving in the United States Army. Plaintiff joined the Army in January 1980, and was later discharged.
2. After being discharged from the Army, plaintiff started working in carpentry. Plaintiff was employed by S.T. Wooten and performed roofing work for approximately ten (10) years. Plaintiff next worked for Sadler Roofing, and then for approximately three years performed worked in home remodeling.
3. Plaintiff was next employed by defendant-employer, and worked in that capacity for approximately six (6) years prior to the incident giving rise to this claim. While employed by defendant-employer, plaintiff continued performing self-employed carpentry work in the evenings. For defendant-employer, plaintiff worked as a general laborer, with his duties including nailing, cutting and installing vinyl siding.
4. In the performance of his duties, plaintiff frequently received cuts on his hands while working with and cutting the vinyl siding. Plaintiff testified that he reported these cuts regularly to defendant-employer. Typically when he received a cut, plaintiff testified that he would wrap the wound, or apply tape or a band-aid.
5. Plaintiff's testimony regarding his cutting duties for defendant-employer and the frequency with which he cut his hands is accepted as credible by the undersigned. These cuts constituted an interruption in plaintiff's work routine.
6. At his deposition, plaintiff testified during early January 2001, he fell off of a ladder while working for defendant-employer and injured his back. Plaintiff further testified that he believed he had pulled a muscle and continued working. Although this incident would constitute a specific traumatic incident and an injury by accident, the evidence is inconclusive as to what causal role it had in the development of plaintiff's ultimate medical condition and disability.
7. On February 9, 2001, plaintiff sought medical treatment at Martin General Hospital for back pain that he had been experiencing for approximately one week. Following an examination, plaintiff was prescribed medication for his symptoms and was released. Plaintiff then returned home, where the medications eased his pain to a degree, but did not totally alleviate it. Plaintiff testified after returning home and lying down, his leg began going numb.
8. On February 11, 2001, plaintiff returned to the Emergency Room. At that time, plaintiff's legs were numb to the extent that he could not walk. Plaintiff was diagnosed as having an acute onset of paralysis of his lower extremities and was transferred to Pitt County Memorial Hospital. At that facility, Dr. Larry Davidson performed emergency surgery on plaintiff's back to remove a thoracic spinal abscess or cyst caused by a Staph infection.
9. Following his surgery, plaintiff was primarily treated by Dr. Richard Rumley until he was discharged on May 3, 2001. During his hospitalization, plaintiff experienced several complications related to his spinal infection. These included paralysis, hepatitis C, chronic liver failure with encephalitis secondary to his hepatitis C, multiple deep venous thromboses, urinary and fecal incontinence secondary to paraplegia, hypertension, ascitites, anasarca with skin lesions, persistent small bilateral pleural effusions, and numerous Staph infections to IV sites and to his skin. Plaintiff is now paralyzed from the waist down.
10. Each instance when plaintiff was cut while working for defendant-employer was an interruption of his regular work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences, and thereby constituted an injury by accident arising out of and in the course of his employment with defendant-employer.
11. Dr. Davidson testified at his deposition that in order to have a spinal abscess, there has to be a source of infection. Dr. Davidson could not testify as to exactly how or when plaintiff came in contact with the bacteria that caused his spinal abscess. Dr. Davidson further testified at his deposition that plaintiff could have been infected while performing carpentry work for himself or while working for defendant-employer. However, in an earlier correspondence dated February 22, 2001, Dr. Davidson opined that it was likely that plaintiff sustained his spinal abscess as a result of a cutaneous infection incurred from nicks and cuts he sustained "while on the job."
12. Dr. Rumley questioned plaintiff and plaintiff's family extensively regarding his work and potential sources of the infection, and learned of his duties and the frequent cuts on his hands. Based in part upon this information, Dr. Rumley opined that plaintiff probably was infected from the cuts on his hands, which plaintiff has testified happened while cutting vinyl for defendant-employer, as opposed to occurring while performing carpentry work on his own. Dr. Rumley testified that upon examination of plaintiff in the hospital, plaintiff did in fact have cuts on his hands.
13. As the result of his injuries by accident, plaintiff developed a spinal infection and abscess/cyst that ultimately caused him to be paralyzed from the waist down
14. Plaintiff's employment with defendant-employer caused or significantly contributed to the development of the staph infection and abscess/cyst that lead to his paralysis.
15. Plaintiff continues to experience problems with infections since his surgery in 2001. On July 16, 2001, plaintiff was admitted to the hospital for nausea, vomiting, and to rule out endocarditis. At the hospital, plaintiff was treated with antibiotics and fluids. On August 29, 2001 plaintiff was again admitted to the hospital for hematuria which was related to the medicines he was taking as the result of his spinal infection. On December 4, 2001, plaintiff was admitted for bilateral big toe infections. Additionally, plaintiff's condition has required ongoing rehabilitation.
16. As the result of his injuries by accident plaintiff has been unable to earn any wages in any employment for the period of February 11, 2001 through the present and continuing.
17. In the parties Pre-Trial Agreement, it is indicated that defendants would be submitting an Industrial Commission Form 22 Wage Chart from which plaintiff's average weekly wage would be calculated. To date, no such form has been submitted to the undersigned. Plaintiff's Form 18 lists his average weekly wage to be $425.00, which yields a compensation rate of $283.48.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff's average weekly wage was $425.00, which yields a compensation rate of $283.48. N.C. Gen. Stat. § 97-2(5).
2. Each instance when plaintiff was cut while working for defendant-employer was an interruption of his regular work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences, and thereby constituted an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6). As the result of his injuries by accident, plaintiff developed a spinal infection and abscess/cyst that ultimately caused him to be paralyzed from the waist down. Id.
3. As the result of his injuries by accident, plaintiff is entitled to have defendants pay him ongoing total disability compensation at the rate of $283.48 per week for the period of 11 February 2001 through the present and continuing until such time as he returns to work, or until further Order of the Commission. N.C. Gen. Stat. § 97-29.
4. As the result of his injuries by accident, plaintiff is entitled to have defendants pay for all related medical expenses incurred or to be incurred, including the surgery performed by Dr. Davidson. N.C. Gen. Stat. §§ 97-25; 97-25.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Defendants shall pay to plaintiff ongoing total disability compensation at the rate of $283.48 per week for the period of February 11, 2001 through the present and continuing until such time as he returns to work, or until further Order of the Commission. From the amounts having accrued, this compensation shall be paid to plaintiff in a lump sum. This compensation is subject to the attorney's fee approved herein.
2. Defendants shall pay for all related medical expenses incurred or to be incurred by plaintiff as the result of his injuries by accident, or as the result of his occupational disease, including the surgery performed by Dr. Davidson. The issue of dependent care is reserved for later ruling.
3. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded herein is approved for counsel for plaintiff. From the compensation having accrued, this fee shall be deducted from the amounts due plaintiff and paid directly to counsel for plaintiff, with counsel for plaintiff receiving every fourth check thereafter.
4. Defendants shall pay the costs.
This the ___ day of August, 2004.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER